**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
CIVIL ACTION NO. 3:25-CV-636**

| | |
|---|---|
| CAMCO MANUFACTURING, LLC, | |
| Plaintiff, | |
| vs. | **COMPLAINT** |
| SEAFLO MARINE & RV NORTH AMERICA, LLC, | **JURY DEMAND** |
| Defendant. | |

     Plaintiff Camco Manufacturing, LLC, by and through its undersigned counsel, files this Complaint against Defendant SEAFLO Marine & RV North America, LLC, and, in support thereof, alleges as follows:

<u>**THE PARTIES**</u>

     1.    Plaintiff Camco Manufacturing, LLC ("Plaintiff" or "Camco") is a limited liability company duly organized and existing under the laws of the State of Delaware with a principal place of business and its headquarters in Greensboro, North Carolina. Camco was previously organized as a North Carolina corporation named Camco Manufacturing, Inc., and was converted on July 23, 2021, to a Delaware limited liability company named Camco Manufacturing, LLC. Camco Manufacturing, LLC, the current operating entity, and its predecessor in interest relevant to this lawsuit, Camco Manufacturing, Inc., are referred to collectively in this Complaint as "Camco." Camco Manufacturing, LLC, is the owner of, and received via the conversion, all trademark, trade dress, patent, and other rights and associated goodwill relevant to this lawsuit formerly owned by Camco Manufacturing, Inc.

2.      Upon information and belief, Defendant SEAFLO Marine & RV North America, LLC ("Defendant"), is a limited liability company organized and existing under the laws of the State of Illinois with its principal place of business located at 3602 W. Sample Street, South Bend, Indiana 46619.   Upon information and belief, Defendant owns and operates the website seaflousa.com and otherwise does business under the name SEAFLO.

<u>**JURISDICTION AND VENUE**</u>

3.      Camco brings this action for trade dress and trademark infringement, patent infringement, unfair competition, and unfair or deceptive trade practices under the laws of the United States and state law(s). Certain of Camco's claims, including those for trademark and trade dress infringement and patent infringement, arise under the laws of the United States, *see* 15 U.S.C. §§ 1051 *et seq.* & 1125; 35 U.S.C. § 271. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 & 1338 and 15 U.S.C. §§ 1116 & 1121, among other laws. This Court also has supplemental jurisdiction over Camco's remaining claims pursuant to 28 U.S.C. § 1367 because those claims arise from part of the same case or controversy as the federal question claims.

4.      This Court may exercise personal jurisdiction over Defendant, and venue is proper in this District, because Defendant has a regular and established place of business within this District. Upon information and belief, Defendant actively and regularly conducts business within the State of Indiana and within this District and has a continuous, systematic, and substantial presence within this District. Further, upon information and belief, Defendant's infringement of Camco's patents and trade dress is occurring within the State of Indiana and this District through Defendant's importation, manufacture, and distribution of products that infringe Camco's patent and other intellectual property rights within the State of Indiana and this District and through Defendant's sales of or offers to sell those products in the State of Indiana and in this District.

5.    Venue as to Defendant is thus proper in this judicial district under 28 U.S.C. §§ 1391(b) and (c) and 1400(b).

## FACTS CONCERNING THE INFRINGEMENTS

**A.    Background on Camco**

6.    Camco is a leading innovator in the recreational vehicle ("RV"), boating, and camping accessories industry, and designs and manufactures premium accessories, including, without limitation, sewer hoses, sewer hose fittings, sewer hose supports, levelling blocks, and tongue jack stands for use in connection with RVs.

7.    Through the advertisement, promotion, distribution, and sale of goods, Camco has built a prominent reputation as a leader in creating high-quality gear for outdoor enthusiasts by continuously collaborating with inventors and small businesses to bring innovation to the RV, boat, and camping community.

8.    Over its successful fifty-eight-year history, Camco has secured various intellectual property rights to protect its products, including, without limitation, the patents and trademark identified herein.  Camco owns over 250 patents and fifty active and registered trademarks in various countries, including the United States and Canada.

**B.    Camco's Trade Dress**

9.    Defendant has copied, misappropriated, and otherwise knocked off Camco's renowned and well-known orange trade dress/trademark for sewer hoses and fittings often used with RVs. In this Complaint, the term "Knock-off Products" refers to Defendant's sewer hoses and sewer hose fittings in question, namely those bearing the infringing trade dress, those which infringe one or both of Camco's trademark or trade dress, and/or those for which their sale or distribution constitutes unfair competition or unfair or deceptive trade practices.

10.     One line of Camco's products for RVs is a line of sewer hose fittings used to connect RVs to sewer dump stations. RV operators find it important to have such sewer hose fittings, because it is common for an RV operator to park the RV at an RV campground or other location where a sewer hose fitting is needed to connect to a sewer dump station to clear waste from the RV.

11.     Camco has manufactured and sold such sewer hose fittings in interstate commerce for years. Camco sewer hose fittings are sold to consumers at modest prices through a variety of retail channels, including but not limited to recreational products stores, catalogs, and the internet.

12.     Years ago, a team of Camco designers working in North Carolina developed an ornamental trade dress for its sewer hose fittings. Namely, for these products, Camco employs the color orange (the "Trade Dress"). In this Complaint, the term "Trade Dress" includes Camco's trademark identified in U.S. Registration No. 5864456 on such trade dress.

13.     In addition to the registered trade dress, Camco designers have created a distinct combination of product features on its sewer hose fittings that are arranged in distinct fashion that has acquired secondary meaning as a source indicator for the Camco sewer hose fittings.

14.     Examples of Camco's sewer hose fittings with Camco's Trade Dress are shown below.



15.    Camco has continuously used its Trade Dress to sell its sewer hose fittings with Camco's Trade Dress since approximately March 2006, i.e. more than 18 years. Camco has consistently and intentionally used its Trade Dress to facilitate a connection in the minds of consumers between products with Camco's Trade Dress and the quality for which Camco has become known.

16.     On information and belief, for several years prior to any infringing use described herein, Camco was the exclusive company to sell in America sewer hose fittings with Camco's Trade Dress (i.e. the registered color orange) and unique arrangement of features in, at a minimum, the RV market.

17.     Camco's sales of the products bearing Camco's Trade Dress have been significant. Camco's sewer hose fittings with Camco's Trade Dress have consistently been among the top selling sewer hose fittings for RVs.

18.     Camco has used, and continues to use, its Trade Dress to identify its products and to distinguish them from the products of other manufacturers and distributors.

19.     Camco's Trade Dress is and has been unusual, distinctive, and unlike the trade dress used by other companies for such products.

20.     Camco's Trade Dress is either inherently distinctive as a source indicator or indicia of source or origin for its products or has acquired secondary meaning as a source indicator of Camco's products.

21.     Camco's Trade Dress has also acquired distinctiveness among the relevant public and audience for RV sewer hose fittings, as demonstrated by the volume of Camco's sales and advertising success, the long length of time—for more than 18 years—Camco has been the exclusive seller of such products with Camco's Trade Dress, attempts to plagiarize Camco's Trade Dress, awareness by the relevant public, and other factors. Camco's Trade Dress for its relevant products acquired distinctiveness and secondary meaning prior to Defendant's production, marketing, and sale of the Defendant's products at issue in this lawsuit.

22.     Camco's Trade Dress is protectable and protected under federal and state laws.

1883595v2                                        6

23.    Further, on September 17, 2019, the United States Patent and Trademark Office granted to Camco a trademark registration, U.S. Registration No. 5864456, for the trademark/trade dress consisting of the Trade Dress, namely, the color orange as applied to sewer hose fittings used with recreational vehicles, for the products identified as "non-metal sewer hoses and hose fittings; substantially non-metal sewer hoses with wire reinforcement ribs; non-metal sewer hoses with non-metal reinforcement ribs." An image of the registration certificate appears below.





Reg. No. 5,864,456

Registered Sep. 17, 2019

Int. Cl.: 17

Trademark

Supplemental Register

CAMCO Manufacturing, Inc. (NORTH CAROLINA CORPORATION)
121 Landmark Drive
Greensboro, NORTH CAROLINA 27409

CLASS 17: non-metal sewer hoses and hose fittings; substantially non-metal sewer hoses with wire reinforcement ribs; non-metal sewer hoses with non-metal reinforcement ribs

FIRST USE 3-00-2006; IN COMMERCE 3-00-2006

The color(s) orange is/are claimed as a feature of the mark.

The mark consists of the color orange as applied to sewer hose fittings used with recreational vehicles in their entirety. The broken lines are intended to show the positioning of the mark and are not claimed as part of the mark.

SER. NO. 87-896,907, FILED P.R. 04-27-2018; AM. S.R. 07-26-2019



Director of the United States
Patent and Trademark Office

24.    Camco's Trade Dress is not functional. It does not assist the functioning of sewer hose fittings, and it is not otherwise functional.    Camco's exclusive use of its Trade

Dress/trademark does not place other competitors at a disadvantage; there are a variety of other non-infringing designs available on the market.

**C.    Defendant's Infringement of Camco's Trade Dress**

25.    Defendant's Knock-off Products have been configured and marketed in trade dress that is likely to cause confusion among the consuming public as to the source of, respectively, Camco's relevant products and/or Defendant's Knock-off Products.

26.    Below are examples of online retail locations where Defendant is offering its Knock-off Products for sale both on its own website and as a seller through Amazon.com.



1883595v2



27.     Below are examples of Defendant's infringing products that have been acquired during pre-suit investigation.





28.    Confusion is likely to arise based on similarities between Defendant's trade dress and Camco's Trade Dress, including without limitation the identical or nearly identical color, all on the same or very similar types of products, as well as the identical arrangement, number and shape of features found on Defendant's products.

29.    Confusion is also likely to arise considering that Defendant's products and Camco's products are of the same type and are sold through the same channels of trade, including Amazon.com. Other factors additionally make confusion likely, including a consideration of the degree of care expected from consumers for the modestly-priced items.

30.    Upon information and belief, Defendant modeled its products on Camco's Trade Dress in an effort to induce the consuming public into purchasing Defendant's Knock-off Products rather than Camco's products.

31.     Defendant's copying and adoption of Camco's Trade Dress is material to purchasing decisions.  Upon information and belief, the consuming public has come to expect that products are from Camco, and are of a certain quality, when they bear Camco's Trade Dress. Defendant's copying of that Trade Dress and use of confusingly similar trade dress harms both Camco and the consuming public.

32.     Because of Defendant's actions, there is a likelihood of confusion.

33.     Defendant has infringed the trademark and trade dress of Camco and created a false designation of origin by manufacturing, distributing, offering for sale, and selling, without Camco's permission, sewer hose fittings to be used with RVs (or other products) that have a color scheme and configuration that is confusingly similar to Camco's trademark and trade dress. Upon information and belief, Defendant has knowingly and willfully infringed Camco's trademark and trade dress with the intent and effect of trading upon Camco's goodwill by causing confusion and mistake among customers.

34.     Upon information and belief, Defendant's infringing actions have the intent and effect of deceiving the public into believing that the Knock-off Products are associated with, sponsored by, or approved by Camco, when they are not.

35.     Defendant's conduct in marketing products under trade dress that is confusingly similar to the trademark and trade dress for Camco's products constitutes a violation of federal law, including without limitation Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and 15 U.S.C. § 1114, as well as state laws.

36.     Defendant's conduct described above constitutes unfair competition. Defendant's conduct improperly capitalizes upon the hard work, ingenuity, and rights of Camco, and the goodwill established for Camco and its sewer hose fittings.

37.    Defendant's conduct described above has been knowing, malicious, intentional, and willful.

38.    Defendant committed its actions to deceive the public and potential customers.

39.    Defendant's conduct described above has caused and will continue to cause irreparable injury to Camco and for which a remedy at law of damages will not be sufficient.

40.    Defendant intentionally, actively, and materially contributed to the violations and acts described above, including the manufacturing, marketing, and/or selling of products and the infringements described above.

41.    Camco is entitled to recover damages caused by the conduct of Defendant, as well as an accounting of and disgorgement of the profits of Defendant. Camco is further entitled to the trebling of such damages and an award of its costs and attorneys' fees, plus interest.

42.    Defendant's actions demonstrate its intentional misconduct and that its actions are neither fair use nor fair competition.

43.    Defendant's actions have harmed Camco by diverting sales, confusing the public, and violating Camco's rights in its trademark and trade dress.

**D.    The Patents-in-Suit**

44.    Camco makes every attempt to protect its intellectual property rights, to protect its reputation, and to protect its customers from confusion in the marketplace. To that end, and in addition to the Trade Dress, Camco has obtained numerous patents and other intellectual property registrations, including, as relevant to this Complaint, the following patents: (1) U.S. Patent No. 11,732,829 (the "'829 Patent"); (2) U.S. Patent No. D893,120 (the "'120 Patent"); and (3) U.S. Patent No. 10,053,344 (the "'344 Patent") (collectively the "Patents-in-Suit").

45.    Camco owns all right, title, and interest in and to the Patents-in-Suit.

46.    Camco makes, distributes, offers to sell, and sells products that practice the Patents-in-Suit.  Camco has marked the covered products in accordance with 35 U.S.C. § 287.

47.    Defendant has purposefully advertised, marketed, promoted, offered for sale, sold, distributed, manufactured, and/or imported, and continues to advertise, market, promote, offer for sale, sell, distribute, manufacture, and/or import products to directly compete with Camco that violate Camco's rights, including Camco's patent rights. Defendant's infringement is causing irreparable harm to Camco, thereby forcing Camco to bring this lawsuit to protect its intellectual property.

48.    Upon information and belief, Defendant's infringement is willful and deliberate, entitling Camco to enhanced damages and reasonable attorneys' fees and costs. This case is also "exceptional" within the meaning of 35 U.S.C. § 285, further entitling Camco to an award of attorneys' fees.

49.    Upon information and belief, Defendant intends to continue its unlawful infringing activity, and Camco continues to and will continue to suffer irreparable harm—for which there is no adequate remedy at law—from such unlawful infringing activity unless Defendant is enjoined by this Court.

**E.    Defendant's Infringement of the ʾ829 Patent**

50.    The ʾ829 Patent entitled "CORRUGATED HOSE WITH BAYONET CONNECTOR" was duly and legally issued on August 22, 2023.  A true and accurate copy of the ʾ829 Patent is attached hereto and incorporated herein by reference as **Exhibit A**.

51.    Pursuant to the ʾ829 Patent, Camco has the exclusive rights to use, make, market, and sell certain patented corrugated hoses particularly suited for use for discharge of waste water from an RV.

52.     The Infringing Sewer Hose Kits include the Seaflo Hose, shown in **Exhibit B**, which infringes at least claims 1 and 3-7 of the '829 Patent.

53.     Claim 1 of the '829 Patent recites a corrugated hose with bayonet connector.

54.     The Seaflo Hose (10) is a corrugated hose (12) that includes two bayonet fittings (14, 16), one on each end. (See Exhibit B, Figure 1.)

55.     Claim 1 of the '829 Patent recites a length of hose, a bayonet coupling, and a locking ring.

56.     The Seaflo Hose has a length of hose (10; see Exhibit B, Figure 2), a bayonet coupling (18; see Exhibit B, Figure 2), and a locking ring (20) that serves to lock the hose to the bayonet coupling (see Exhibit B, Figure 3).

57.     Claim 1 of the '829 Patent recites that the length of hose defines a plurality of accordion-shaped corrugations and a proximal end.

58.     The Seaflo Hose has accordion-shaped corrugations (12), and has two ends, and the end of the hose that terminates inside the bayonet coupling can be considered a proximal end (22). (See Exhibit B, Figure 2.)

59.     Claim 1 of the '829 Patent recites that the proximal end includes a cylindrical section and a circumferential ridge.

60.     The proximal end (22) of the Seaflo Hose includes a cylindrical section (24) formed by a portion of the gray cylindrical hose. (See Exhibit B, Figure 2.) The hose has a circumferential ridge (26) formed by a portion of the orange rib that extends around the circumference of the hose and is received in the groove (28) of the locking ring. (See Exhibit B, Figures 2 and 4.) In particular, the hose has a cylindrical shape that defines a circumference, and the circumferential ridge (26)

extends primarily in the circumferential direction around the cylindrical shaped hose. (See Exhibit B, Figures 2 and 4.)

61.    Claim 1 of the '829 Patent recites that the circumferential ridge is positioned between the plurality of accordion-shaped corrugations and the proximal end.

62.    The circumferential ridge (26) of the Seaflo Hose is formed between the plurality of accordion-shaped corrugations and the proximal end. The circumferential ridge (26) is located in the groove (28) of the locking ring (20), while the accordion-shaped corrugations are arranged outside the bayonet coupling (18) and the proximal end of the hose terminates at the shoulder (30) of the locking ring (20). (See Exhibit B, Figures 2 and 4.)

63.    Claim 1 of the '829 Patent recites that the bayonet coupling includes a longitudinal tubular section and a proximal end located opposite the longitudinal tubular section.

64.    The bayonet coupling (18) of the Seaflo Hose has a longitudinal tubular section (32) and a proximal end (34) located opposite the longitudinal tubular section. (See Exhibit B, Figure 2.)

65.    Claim 1 of the '829 Patent recites that the bayonet coupling comprises a circumferential groove positioned adjacent to the proximal end of the bayonet coupling.

66.    The Seaflo Hose bayonet coupling (18) comprises a circumferential groove (36) positioned adjacent to the proximal end (34) of the bayonet coupling (18). (See Exhibit B, Figures 3 and 5.)

67.    Claim 1 of the '829 Patent recites that the bayonet coupling has a circular collar located adjacent to the circumferential groove and spaced from an outer surface of the longitudinal tubular section.

68.    The bayonet coupling (18) of the Seaflo Hose has a circular collar (38) located adjacent to the circumferential groove (36) and spaced apart from an outer surface of the longitudinal tubular section (32). (See Exhibit B, Figures 2, 3, 5, and 7.)

69.    Claim 1 of the '829 Patent recites that a circumferential channel is formed between the circular collar and the longitudinal tubular section.

70.    In the Seaflo Hose, a circumferential channel (40) is formed between the circular collar (38) and the longitudinal tubular section (32). (See Exhibit B, Figures 6 and 7.)

71.    Claim 1 of the '829 Patent recites that the circumferential ridge is frictionally compressed between the locking ring and the bayonet coupling.

72.    The circumferential ridge (26) of the Seaflo Hose is frictionally compressed in the groove (28) of the locking ring between the locking ring (20) and the bayonet coupling (18). (See Exhibit B, Figures 2 and 4.)

73.    Claim 1 of the '829 Patent reads literally or under the doctrine of equivalents on the Seaflo Hose.

74.    Claim 3 of the '829 Patent depends from claim 1 and further recites that the bayonet coupling comprises a bayonet swivel and a slip swivel.

75.    The bayonet coupling (18) of the Seaflo Hose has includes a bayonet swivel (44) that includes the bayonet portion that swivels relative to the hose so as to make the bayonet connection. (See Exhibit G.) The bayonet coupling (18) also includes a slip swivel (46) via which the bayonet coupling is rotatably connected so as to swivel relative to the locking ring (20). (See Exhibit B, Figures 6 and 7.)

76.    Claim 3 of the '829 Patent recites that the bayonet swivel further comprises a generally tubular-shaped member with a proximal end and a distal end.

77.     The bayonet swivel (44) of the Seaflo Hose has a generally tubular-shaped member (48) with a proximal end (50) with the bayonet blades and a distal end (52) that connects to the slip swivel (46). (See Exhibit B, Figure 7.)

78.     Claim 3 of the '829 Patent recites that the proximal end of the bayonet swivel is provided with a plurality of blades spaced around a perimeter opening.

79.     In the Seaflo Hose, the proximal end (50) of the bayonet swivel has a plurality of blades (54, 56) spaced around a perimeter opening (58). (See Exhibit B, Figure 7.)

80.     Claim 3 of the '829 Patent recites that the plurality of blades define one or more guide blades and one or more locking blades.

81.     The plurality of blades of the Seaflo Hose define two guide blades (54) and two locking blades (56). (See Exhibit B, Figure 7.)

82.     Claim 3 of the '829 Patent reads literally or under the doctrine of equivalents on the Seaflo Hose.

83.     Claim 4 of the '829 Patent depends from claim 1 and further recites that the bayonet coupling comprises a bayonet swivel and a slip swivel.

84.     The bayonet coupling (18) of the Seaflo Hose includes a bayonet swivel (44) that includes the bayonet portion that swivels relative to the hose so as to make the bayonet connection. (See Exhibit B, Figure 7.) The bayonet coupling (18) also includes a slip swivel (46) via which the bayonet coupling is rotatably connected so as to swivel relative to the locking ring (20). (See Exhibit B, Figures 6 and 7.)

85.     Claim 4 of the '829 Patent further recites that the bayonet swivel further comprises a generally tubular-shaped member with a proximal end and a distal end

86.     The Seaflo Hose bayonet swivel (44) has a generally tubular-shaped member (48) with a proximal end (50) with the bayonet blades and a distal end (52) that connects to the slip swivel (46). (See Exhibit B, Figure 7.)

87.     Claim 4 of the '829 Patent further recites that the proximal end of the bayonet swivel is provided with a plurality of blades spaced around a perimeter opening.

88.     The proximal end (50) of the Seaflo Hose bayonet swivel has a plurality of blades (54, 56) spaced around a perimeter opening (58). (See Exhibit B, Figure 7.)

89.     Claim 4 of the '829 Patent further recites that the plurality of blades comprising guide blades and locking blades.

90.     The plurality of blades of the Seaflo Hose comprise two guide blades (54) and two locking blades (56). (See Exhibit B, Figure 7.)

91.     Claim 4 of the '829 Patent further recites that the guide blades are disposed about one hundred eighty degrees from one another and the locking blades are disposed from one another, such that the locking blades and the guide blades alternate about the perimeter opening at the proximal end of the bayonet swivel.

92.     In the Seaflo Hose, the two guide blades (54) are disposed on opposite sides, approximately 180 degrees from one another about the perimeter opening (58), while the two locking blades (56) alternate with the two guide blades (54) about the perimeter opening (58) at the proximal end (50) of the bayonet swivel (44). (See Exhibit B, Figures 7 and 8.)

93.     Claim 4 of the '829 Patent reads literally or under the doctrine of equivalents on the Seaflo Hose.

94.     Claim 5 of the '829 Patent depends from claim 1 and further recites that the bayonet coupling further comprises a bayonet swivel and a slip swivel.

95.    The Seaflo Hose bayonet coupling (18) includes a bayonet swivel (44) that includes the bayonet portion that swivels relative to the hose so as to make the bayonet connection. (See Exhibit B, Figure 6.) The bayonet coupling (18) also includes a slip swivel (46) via which the bayonet coupling is rotatably connected so as to swivel relative to the locking ring (20). (See Exhibit B, Figures 7 and 8.)

96.    Claim 5 of the '829 Patent recites that the bayonet swivel further comprises a generally tubular-shaped member with a proximal end and a distal end.

97.    The bayonet swivel (44) of the Seaflo Hose has a generally tubular-shaped member (48) with a proximal end (50) with the bayonet blades and a distal end (52) that connects to the slip swivel (46). (See Exhibit B, Figure 7.)

98.    Claim 5 of the '829 Patent recites that the proximal end of the bayonet swivel is provided with a plurality of blades spaced around a perimeter opening.

99.    The proximal end (50) of the Seaflo Hose bayonet swivel has a plurality of blades (54, 56) spaced around a perimeter opening (58). (See Exhibit B, Figure 7.)

100.    Claim 5 of the '829 Patent recites that the plurality of blades comprising guide blades and locking blades.

101.    In the Seaflo Hose, the plurality of blades comprises two guide blades (54) and two locking blades (56). (See Exhibit B, Figure 7.)

102.    Claim 5 of the '829 Patent recites that each of the plurality of blades defines a tapered end and a slotted opening.

103.    Each of the blades (54, 56) of the Seaflo Hose includes a tapered end (60, 62) and a slotted opening (64, 66). (See Exhibit B, Figures 7 and 8.)

104.    Claim 5 of the '829 Patent reads literally or under the doctrine of equivalents on the Seaflo Hose.

105.    Claim 6 of the '829 Patent depends from claim 1 and further recites that the bayonet coupling comprises a bayonet swivel and a slip swivel.

106.    The Seaflo Hose bayonet coupling (18) includes a bayonet swivel (44) that includes the bayonet portion that swivels relative to the hose so as to make the bayonet connection. (See Exhibit B, Figure 7.) The bayonet coupling (18) also includes a slip swivel (46) via which the bayonet coupling is rotatably connected so as to swivel relative to the locking ring (20). (See Exhibit B, Figures 7 and 8.)

107.    Claim 6 of the '829 Patent recites that the bayonet swivel further comprises a generally tubular-shaped member with a proximal end and a distal end.

108.    The bayonet swivel (44) of the Seaflo Hose has a generally tubular-shaped member (48) with a proximal end (50) with the bayonet blades and a distal end (52) that connects to the slip swivel (46). (See Exhibit B, Figure 7.)

109.    Claim 6 of the '829 Patent recites that the proximal end of the bayonet swivel is provided with a plurality of blades spaced around a perimeter opening.

110.    The proximal end (50) of the Seaflo Hose bayonet swivel has a plurality of blades (54, 56) spaced around a perimeter opening (58). (See Exhibit B, Figure 7.)

111.    Claim 6 of the '829 Patent recites that the plurality of blades comprises guide blades and locking blades.

112.    The plurality of blades of the Seaflo Hose comprises two guide blades (54) and two locking blades (56). (See Exhibit B, Figure 7.)

113.    Claim 6 of the '829 Patent recites that the guide blades defining a slotted opening with a rounded end.

114.    Each of the Seaflo Hose guide blades (54) includes a slotted opening (64) with a rounded end (62). (See Exhibit B, Figure 8.)

115.    Claim 6 of the '829 Patent recites that the locking blades defining a slotted opening with a terminal end defining a bi-lobe configuration with a large lobe opening and a small lobe opening.

116.    Each of the locking blades (56) defines a slotted opening (66) with a terminal end (68) defining a bi-lobe configuration with a large lobe opening (70) and a small lobe opening (72). (See Exhibit B, Figure 7.)

117.    Claim 6 of the '829 Patent reads literally or under the doctrine of equivalents on the Seaflo Hose.

118.    Claim 7 of the '829 Patent depends from claim 1 and further recites that the bayonet coupling further comprises a gasket.

119.    The bayonet coupling (18) of the Seaflo Hose includes a gasket (74). (See Exhibit B, Figure 3.)

120.    Claim 7 of the '829 Patent reads literally or under the doctrine of equivalents on the Seaflo Hose.

**F.    Defendant's Infringement of the '120 Patent**

121.    The '120 Patent entitled "FASTEN TONGUE JACK PAD," was duly and legally issued on August 11, 2020.  A true and accurate copy of the '120 Patent is attached hereto and incorporated herein by reference as **Exhibit C**.

122.    The '120 Patent concerns an ornamental design for a fasten tongue jack pad.

1883595v2                                            21

123.    RV tongue jack stands made and sold by Defendant, including the RV tongue jack stands shown in **Exhibit D** (the "Infringing Tongue Jack Stands"), are copies of, identical to, or virtually identical to the products sold by Camco under the '120 Patent.

124.    The Infringing Tongue Jack Stands are copies of, identical to, or virtually identical to the design protected by the '120 Patent.

125.    An ordinary observer, familiar with the prior art designs, would be deceived into believing that the Infringing Tongue Jack Stands are the same as the design claimed by the '120 Patent.

126.    The overall appearance of the Infringing Tongue Jack Stands is substantially similar to the design protected by the '120 Patent.

127.    The Infringing Tongue Jack Stands have adopted the novel aspects of the design claimed by the '120 Patent, including but not limited to, in combination and/or in sub-combination, the number of legs, the pattern of the legs, the length and width ratio of the legs, the converging design of the feature at the end of the legs, the shape of the legs, the overall shape and size of the features at the end of each leg, and the central openings.

128.    Upon information and belief, Defendant knows that the Infringing Tongue Jack Stands it sells have been specially made and adapted to infringe the '120 Patent.

129.    Upon information and belief, Defendant has profited through infringement of the '120 Patent. As a result of Defendant's unlawful infringement of the '120 Patent, Camco has suffered and will continue to suffer damages. Camco is entitled to recover these damages from Defendant.

130.    Defendant has had actual and constructive knowledge of the '120 Patent since before this Complaint was filed.

**G.    Defendant's Notice of the Patents-in-Suit and Camco's Trade Dress**

131.    On May 14, 2024, shortly after learning that Defendant was offering the Knock-off Products, the Infringing Sewer Hose Kits, and the Infringing Tongue Jack Stands, (collectively the "Infringing Products") for sale, counsel for Camco sent a letter to Defendant notifying Defendant that the Infringing Products infringe Camco's trade dress, patents, and other proprietary rights (the "Cease-and-Desist Letter").  The Cease-and-Desist Letter requested that Defendant respond to its allegations of infringement and confirm its intention to cease selling the Infringing Products by no later than May 28, 2024.

132.    As of the date of this Complaint, Defendant has not responded substantively to the Cease-and-Desist Letter.

**FIRST CLAIM FOR RELIEF**
**(Trade Dress Infringement under the Federal Lanham Act)**

133.    Plaintiff incorporates the allegations set forth in the preceding paragraphs as if the same were fully set forth herein.

134.    Camco owns rights in Camco's Trade Dress for its sewer hose fittings often used with RVs. Camco's Trade Dress consists of the color orange used in connection with such products. Moreover, Camco's Trade Dress includes the unique arrangement, number and shape of features found in its products, including those features found on Camco's sewer hose fittings. Examples of Camco's sewer hose fittings with Camco's Trade Dress are shown below.



135.    Camco's Trade Dress has acquired distinctiveness among the relevant public and

audience for RV sewer hose fittings, as seen by the volume of Camco's sales and paid advertising,

the length of time Camco has been the exclusive seller of such products with Camco's Trade Dress,

awareness by the relevant public, and other factors. Camco's Trade Dress creates a commercial

impression that is distinct from any functionality and was unique in the market prior to Defendant's infringement. Camco's Trade Dress for its relevant products acquired distinctiveness and secondary meaning prior to Defendant's production, marketing, and sale of the Knock-off Products.

136. Camco's Trade Dress is also inherently distinctive.

137. Camco's Trade Dress is protectable and protected under federal and state laws, including by registration with the United States Patent and Trademark Office.

138. Camco's Trade Dress is not functional. It does not assist the functioning of sewer hose fittings, and it is not otherwise functional. For example, there are a variety of other non-infringing designs available on the market.

139. Defendant's Knock-off Products have been configured and marketed in trade dress that is likely to cause confusion among the consuming public as to the source of Defendant's Knock-off Products. Confusion is likely to arise based on similarities between Defendant's trade dress and Camco's Trade Dress. Both display the color orange. Moreover, Defendant has copied the distinctive arrangement, number and shape of physical features found in Camco's Trade Dress. Defendants chose to copy the exact or nearly identical arrangement, number and shape of physical features found in Camco's Trade Dress. Confusion is also likely to arise considering other factors, including the similarity of products, Defendant's intent to copy, that Defendant's products and Camco's products are sold through the same channels of trade, and a consideration of the degree of care expected from consumers for the modestly-priced items.

140. Defendant has infringed Camco's Trade Dress and created a false designation of origin by manufacturing, distributing, offering for sale, and/or selling, without Camco's permission, sewer hose fittings that have trade dress that is confusingly similar to and/or likely to

be confused with the trade dress of Camco's products. Upon information and belief, Defendant has knowingly and willfully infringed Camco's trade dress with the intent and effect of trading upon Camco's goodwill by causing confusion and mistake among customers. Upon information and belief, Defendant's infringing actions have the intent and effect of deceiving the public into believing that the Knock-off Products are associated with, sponsored by, or approved by Camco, when they are not.

141.    Without limitation, Defendant's actions are likely to cause confusion, mistake, or deception of relevant consumer as to the source or origin of the respective products due to the similarities of the color and configurations, products, channels of trade, and marketing, among other factors.

142.    Defendant's conduct in marketing products under trade dress that is confusingly similar to the trade dress of Camco's products constitutes a violation of federal law, including without limitation Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

143.    Such conduct on the part of Defendant has caused and will continue to cause irreparable injury to Camco and for which a remedy at law of damages will not be sufficient.

144.    Camco is entitled to recover damages caused by the conduct of Defendant, as well as an accounting of and disgorgement of the profits of Defendant. Camco is further entitled to the trebling of such damages and an award of its costs and attorneys' fees, plus interest.

### SECOND CLAIM FOR RELIEF
**(Infringement of a Registered Trademark in the Trade Dress)**

145.    Plaintiff incorporates the allegations set forth in the preceding paragraphs as if the same were fully set forth herein.

146.    Camco owns U.S. trademark Registration No. 5864456.  The mark consists of the color orange as applied to sewer hose fittings used with recreational vehicles in their entirety."

The description of goods for Registration No. 5864456 (The color ORANGE for sewer hose fittings) is for use on: "non-metal sewer hoses and hose fittings; substantially non-metal sewer hoses with wire reinforcement ribs; non-metal sewer hoses with non-metal reinforcement ribs."

147.    By reason of the foregoing, Defendant has knowingly engaged and is continuing to engage in acts of infringement of Camco's registered trademark in violation of 15 U.S.C. § 1114.

148.    Defendant acted with knowledge and intent to cause confusion or mistake, or to deceive consumers, and such conduct is likely to cause confusion or mistake, or to deceive. Without limitation, Defendant's actions are likely to cause confusion, mistake, or deception of the relevant consumer as to the source or origin of the respective products due to the similarities of the color combinations and configurations, products, channels of trade, and marketing, among other factors.

149.    Such conduct on the part of Defendant has caused and will continue to cause irreparable injury to Camco and for which a remedy at law of damages will not be sufficient.

150.    Camco is entitled to recover damages caused by the conduct of Defendant, as well as an accounting of and disgorgement of the profits of Defendant, plus interest and costs. Camco is further entitled to the trebling of such damages and an award of its costs and attorneys' fees, plus interest.

**THIRD CLAIM FOR RELIEF**
**(Common Law Trade Dress Infringement)**

151.    Plaintiff incorporates the allegations set forth in the preceding paragraphs as if the same were fully set forth herein.

152.    By reason of the foregoing, Defendant has engaged and is continuing to engage in acts of trade dress infringement in violation of the common law.

153.   Such conduct on the part of Defendant has caused and will continue to cause irreparable injury to Camco and for which a remedy at law of damages will not be sufficient.

154.   Camco is entitled to recover damages caused by the conduct of Defendant, as well as an accounting of and disgorgement of the profits of Defendant, plus interest and costs.

**FOURTH CLAIM FOR RELIEF**
**(Unfair Competition)**

155.   Plaintiff incorporates the allegations set forth in the preceding paragraphs as if the same were fully set forth herein.

156.   By reason of the foregoing, Defendant has engaged, and is continuing to engage, in acts of unfair competition prohibited by law. To wit, Defendant has knocked off, copied, and infringed Camco's Trade Dress in its manufacturing, marketing, and sale of the Knock-off Products.

157.   Defendant's unfair competition improperly capitalizes upon the hard work, ingenuity, and rights of Camco, namely in the Camco Trade Dress, consumer recognition, and goodwill established for Camco and its sewer hose fittings for use with RVs.

158.   Defendant's conduct described above has been knowing, malicious, intentional, and willful.

159.   Defendant committed these actions to deceive the public and potential customers.

160.   Defendant's actions are likely to cause confusion in the minds of the relevant public, leading the relevant public to believe that Defendant's Knock-off Products emanate or originate from Camco and/or that Camco has approved, sponsored, or otherwise associated itself with Defendant's Knock-off Products, which is false.

161.   Such conduct on the part of Defendant has caused and will continue to cause irreparable injury to Camco and for which a remedy at law of damages will not be sufficient.

1883595v2

162.    Camco is entitled to recover damages caused by the conduct of Defendant, as well as an accounting of and disgorgement of the profits of Defendant, plus interest and costs.

### FIFTH CLAIM FOR RELIEF
**(Indiana Common Law)**

163.    Plaintiff incorporates the allegations set forth in the preceding paragraphs as if the same were fully set forth herein.

164.    In violation of the common law of Indiana, Defendant has unfairly competed with Camco by selling Knock Off Products in U.S. commerce bearing confusingly similar, identical or substantially similar Camco Trade Dress.  Defendant's Knock Off Products are so confusingly similar to Camco's Trade Dress products, that the sale of the Knock Off Products infringes and unfairly competes with Camco and Camco's Trade Dress.

165.    Defendant's use of Camco's Trade Dress constitutes a false designation of origin or otherwise creates the impression that Defendant is somehow connected with Camco, and is thereby likely to confuse consumers to the detriment of Camco and Camco's Trade Dress.

166.    Defendant's conduct constitutes common law trademark infringement and unfair competition, which has damaged and will continue to damage Camco unless enjoined by this Court.

167.    Defendant's conduct is willful, wanton, malicious, reckless and in conscious disregard of Camco's rights in its Trade Dress.

168.    Such conduct on the part of Defendant has proximately caused and will continue to cause irreparable injury to Camco and for which a remedy at law of damages will not be sufficient.

169.    Camco is entitled to recover its damages caused by the conduct of Defendant, as well as a disgorgement of the profits of Defendant. Camco is further entitled to the trebling of such damages and an award of its costs and attorneys' fees, plus interest.

1883595v2

### SIXTH CLAIM FOR RELIEF
**(Infringement of U.S. Patent No. 11,732,829)**

170.    Plaintiff incorporates the allegations set forth in the preceding paragraphs as if the same were fully set forth herein.

171.    Camco is the owner of the '829 Patent, with all substantive rights in and to that patent, including the sole and exclusive right to prosecute this action and enforce the '829 Patent against infringers, and to collect damages for all relevant times.

172.    Defendant has directly infringed and continues to infringe the '829 Patent, either literally or through the doctrine of equivalents, by making, using, importing, supplying, distributing, selling, and/or offer for sale the Infringing Sewer Hose Kits within the United States, in violation of 35 U.S.C. § 271(a).

173.    Upon information and belief, Defendant has been and continues to make unlawful gains and profits from its infringement of the '829 Patent.

174.    At least as early as May 14, 2024, Defendant has been on notice and has had knowledge of the '829 Patent and of Camco's allegations of infringement. Defendant's infringement of the '829 Patent has been willful and deliberate at least since that date.

175.    Camco has been damaged and irreparably harmed by Defendant's infringement of the '829 Patent for which Camco is entitled to relief under 35 U.S.C. § 284. Camco will continue to suffer damages and irreparable harm unless Defendant is enjoined preliminarily and permanently by this Court from continuing its infringement.

### SEVENTH CLAIM FOR RELIEF
**(Infringement of U.S. Patent No. D893,120)**

176.    Plaintiff incorporates the allegations set forth in the preceding paragraphs as if the same were fully set forth herein.

1883595v2                                      30

177. Defendant has infringed and continues to infringe the '120 Patent by making, using, selling, and offering to sell, in the United States, one or more RV tongue jack stands identified in this Complaint, which embody the design covered by the '120 Patent. Defendant's infringing activities violated 35 U.S.C. § 271(a).

178. The Infringing Tongue Jack Stands made and sold by Defendant, including the RV tongue jack stands shown in **Exhibit D**, are copies of, identical to, or virtually identical to the products sold by Camco under the '120 Patent.

179. The Infringing Tongue Jack Stands made and sold by Defendant, including the RV tongue jack stands shown in **Exhibit D**, are copies of, identical to, or virtually identical to the design protected by the '120 Patent.

180. An ordinary observer, familiar with the prior art designs, would be deceived into believing that the Infringing Tongue Jack Stands are the same as the design protected by the '120 Patent.

181. The overall appearance of the Infringing Tongue Jack Stands is deceptively similar to the design protected by the '120 Patent.

182. The Infringing Tongue Jack Stands have adopted the novel aspects of the design protected by the '120 Patent.

## JURY DEMAND

183. Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Camco hereby requests a trial by jury of all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Camco respectfully requests that the Court find in Camco's favor and against Defendant, enter judgment against Defendant, and order and award:

1.     That Defendant is liable to Camco due to Defendant's trade dress and/or trademark infringement, patent infringement, unfair competition, and unfair or deceptive trade practices;

2.     That Defendant and its respective agents, servants, employees, contractors, and all persons, firms, corporations, or entities acting under any of their direction, authority, or control, and all persons acting in concert with any of them, be enjoined permanently from: making, selling, distributing, offering, and/or selling products bearing or using Camco's Trade Dress/trademark and/or any confusingly similar trade dress or trademark;

3.     That the Court issue a temporary restraining order and preliminary and permanent injunction pursuant to 35 U.S.C. § 283 against the continuing infringement of the Patents-in-Suit by Defendant, its officers, agents, employees, attorneys,  representatives, and all others acting in concert therewith;

4.     That the Court order an accounting for all monies received by or on behalf of Defendant and all damages sustained by Camco because of Defendant's aforementioned infringements, that such monies and damages be awarded to Camco, and that interest and costs be assessed against Defendant pursuant to 35 U.S.C. § 284 and 35 U.S.C. § 154(d) and that Defendant be otherwise required to account for its profits derived from violation of Camco's rights;

5.     That the Court declare that Defendant's infringement was and is willful from the time it became aware of the infringing nature of their product and award treble damages for the period of such willful infringement of the Patents-in-Suit, pursuant to 35 U.S.C. § 284;

6.     That Defendant be declared to have directly infringed Camco's trade dress in violation of 15 U.S.C. § 1125(a);

7.     That the Court declare this an exceptional case and order that Defendant pay to Camco its reasonable attorneys' fees and costs, pursuant to 35 U.S.C. § 285 and 15 U.S.C. § 1117;

1883595v2                                   32

8.     That Camco be awarded damages, both compensatory and exemplary, as well as disgorgement of profits of Defendant, and trebled damages according to Indiana common law, in amounts to be determined at trial;

9.     That Defendant be ordered to pay Camco's costs incurred herein, including reasonable attorneys' fees to the extent permitted by applicable law, including, without limitation, pursuant to Indiana common law, plus pre- and post-judgment interest;

10.     That the Court provide a trial by jury as to all issues so triable; and

11.     That the Court award such other and further relief as the Court may deem just, proper, and equitable under the circumstances.


Dated: July 23, 2025                 MAGINOT, MOORE & BECK LLP
                                     Harold C. Moore
                                     Michael A. Swift
                                     Travis W. Baxter
                                     150 W. Market St., Suite 800
                                     Indianapolis, IN  46204
                                     Telephone: 317-644-8323
                                     maswift@maginot.com

                                     By: /s/  Michael A. Swift
                                          Michael A. Swift, Esq.  (17779-49)